UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 09 B 39937 |
| ) | Chapter 11 |
| EQUIPMENT ACQUISITION ) | Judge Donald R. Cassling |
| RESOURCES, INC. ) | |
| ) | |
| Debtor. ) | |
| ) | |
| WILLIAM A. BRANDT, JR., not ) | |
| individually but solely in his capacity as ) | |
| Plan Administrator for EQUIPMENT ) | |
| ACQUISITION RESOURCES, INC. ) | |
| ) | |
| Plaintiff, ) | Adversary No. 11 A 02110 |
| ) | |
| v. ) | |
| ) | |
| CHARTER AIRLINES, LLC, ) | |
| ) | |
| Defendant. ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter comes before the Court on the cross motions of plaintiff William A. Brandt, Jr., not individually but solely in his capacity as Plan Administrator (the "Plan Administrator") for the Debtor, Equipment Acquisition Resources, Inc. ("EAR"), and defendant Charter Airlines, LLC ("Charter Airlines") for summary judgment under Federal Rule of Bankruptcy Procedure 7056.

EAR purported to be a market maker in the semiconductor manufacturing equipment sales and servicing industry. The parties agree that between "at least 2007 until October 8, 2009, [EAR] engaged in a massive fraud by which it sold equipment at inflated prices and leased the equipment back from various lenders. [EAR] misrepresented the value of the equipment, and pledged certain equipment multiple times to secure financing. During this period of time, one or

more of the officer, director, and shareholders of [EAR] knew that [EAR] was engaged in the fraud." (Compl. at ¶ 8.)

The Plan Administrator does not argue that Charter Airlines was involved in any of this fraudulent conduct by EAR. Instead, he argues that EAR made avoidable fraudulent conveyances to Charter Airlines by paying it for flights allegedly taken by EAR's officers purely for personal pleasure, not as business trips taken on EAR's behalf. Eschewing commercial flights, EAR officers Sheldon Player ("Mr. Player"), Mark Anstett ("Mr. Anstett"), and Donna Malone ("Ms. Malone") flew on Charter Airlines private jets to destinations including Las Vegas, Nevada, and Jackson Hole, Wyoming, for which EAR ultimately paid Charter Airlines $161,500.

Charter Airlines argues that the EAR officers in fact conducted EAR business on these trips. Significantly, Charter Airlines also argues that, even if the Plan Administrator were able to establish that those officers took the trips solely for personal pleasure, Charter Airlines would still be entitled to summary judgment in its favor under 11 U.S.C. § 548(c) because it accepted payment for the trips from EAR in good faith and in exchange for value.

For the reasons stated below, the Court finds that the Plan Administrator has failed to establish that it is entitled to summary judgment because a key material fact remains disputed – whether EAR received a reasonably equivalent value for the chartered flights. On the other hand, the Court finds that Charter Airlines is entitled to summary judgment in its favor because it has proved that the undisputed material facts support its defense under 11 U.S.C. §548(c).

### I. JURISDICTION AND PROCEDURE

This matter is brought by the Plan Administrator under 11 U.S.C. § 548 to avoid an alleged fraudulent conveyance made to Charter Airlines. Charter Airlines filed an answer and

2

jury demand on December 28, 2011. Charter Airlines has not filed a proof of claim in the bankruptcy case or otherwise consented to the jurisdiction of the bankruptcy court to issue a final judgment against it.

The jurisdiction of Article I bankruptcy courts is more limited than that of Article III district courts. Bankruptcy courts have statutory authority to issue final orders and judgments only in "*core proceedings arising under* title 11, or *arising in* a case under title 11." 28 U.S.C. § 157(b)(1) (emphasis added). Those final orders and judgments are "subject to review under section 158 of this title," *id.*, meaning that a reviewing court may only reverse factual findings determined to be clearly erroneous. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). The relevant statute contains a non-exhaustive list of "core proceedings" in which the bankruptcy court may enter a final order or judgment. 28 U.S.C. § 157(b)(2). That statutory list includes proceedings to determine, avoid, or recover fraudulent conveyances. 28 U.S.C.§ 157(b)(2)(H).

By contrast, when the bankruptcy court has jurisdiction over a matter only because it is in some way "related to" the bankruptcy proceedings, the court may not enter final judgment, but may only enter proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). The proceedings in this latter category are known as "noncore" proceedings.

In *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the Supreme Court partially overturned this statutory grant of authority, holding that only Article III judges possess the constitutional authority to issue final orders or judgments in proceedings in certain types of lawsuits, including those to recover alleged fraudulent conveyances. *Id.* at 2618. Several courts of appeal, including the Seventh Circuit and the Ninth Circuit, went further, ruling that bankruptcy courts also lack the *statutory* authority to issue recommended findings of fact and conclusions of law in fraudulent conveyance actions. *Wellness Int'l Network Ltd. v. Sharif*, 727 F.3d 751 (7th Cir.

3

2013); *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012). The reasoning behind these opinions is that the statute only gives the bankruptcy courts the authority to issue proposed findings of fact and conclusions of law in "noncore" proceedings, and fraudulent conveyance actions are statutorily defined as "core" proceedings. In circuits adopting this reasoning, therefore, fraudulent conveyance actions fell into a gap in which the bankruptcy court lacked the ability to proceed at all.

Recently, the United States Supreme Court addressed this "gap" issue, interpreting 28 U.S.C. § 157 as permitting fraudulent conveyance claims to proceed as noncore claims even though the statute itself lists them as core claims. *Exec. Benefits Ins. Agency v. Arkison*, No. 12-1200, 2014 WL 2560461 (U.S. June 9, 2014). As a result, the decision in *Arkison* enables bankruptcy courts to issue proposed findings of fact and conclusions of law in suits to recover alleged fraudulent conveyances.

Because this is a fraudulent conveyance action, the Court will proceed as though it is a noncore matter within the meaning of 28 U.S.C. § 157(c)(1). Accordingly, the Court will enter proposed findings of fact and conclusions of law. To the extent a conclusion of law is improperly characterized as a finding of fact, it should be considered a conclusion of law. To the extent a finding of fact is improperly characterized as a conclusion of law, it should be considered a finding of fact. *See In re Piper's Alley Co.*, 69 B.R. 382, 384 (N.D.Ill.1987).

## II. APPLICABLE SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). On a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of the record, whether there is any material dispute of fact

that requires trial." *Egan v. Freedom Bank*, 659 F.3d 639, 643 (7th Cir. 2011) (internal quotation omitted).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff, if it is the movant, can meet this burden by adducing evidence sufficient to make out a prima facie case on each element of its claim. *McKinney v. Am. River Transp. Co.*, 954 F. Supp.2d 799, 803 (S.D. Ill. 2013). If the plaintiff accomplishes this then the defendant must adduce evidence to show some genuine issue of fact for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When faced with cross-motions for summary judgment, the court must view all facts and draw all reasonable inferences in favor of the party against whom the motion under consideration is made. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011). Rule 56 describes not only the standard but the procedures for summary judgment motions. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012). This bankruptcy court's Local Rules also set out summary judgment procedures.

Under Local Rule 7056-1, the movant must submit a separate statement of material facts consisting of short numbered paragraphs with references to evidentiary material supporting each statement. L.R. 7056-1(A) & (B). Both parties here have complied with this requirement. The opposing party must then respond to each of the movant's statements of fact, admitting or denying the statement, and including "in the case of any disagreement," references to evidentiary material. L.R. 7056-2(A)(2)(a).

In response to the Plan Administrator's 7056-1 Statement, Charter Airlines "adopts and incorporates Paragraphs 1-12 and Paragraph 14" of the Plan Administrator's 7056-1 Statement.

5

(Charter Airlines 7056-1 Statement at ¶ 1.) Charter Airlines denies the factual and legal conclusions contained in ¶ 13 of the Plan Administrator's 7056-1 Statement. (*Id.*)

The Court accepts these as admissions of ¶¶ 1-12 and 14. However, the Court admonishes Charter Airlines for its failure to properly comply with Local Rule 7056 by filing a separate 7056-2 statement to the Plan Administrator's 7056-1 Statement.

### III. FACTS AND BACKGROUND

EAR had been continuously insolvent since October of 2005. (Plan Administrator 7056-1 Statement at ¶ 9.) From 2007 until October 8, 2009, it engaged in a massive fraud whereby it misrepresented the value of equipment, sold it at artificially inflated prices, leased the equipment back from various lenders, and, in certain cases, pledged the same equipment multiple times to secure financing. (*Id.* at ¶ 8.) During this period of time, one or more of the officers, directors, and shareholders of EAR knew that EAR was engaged in this fraud, and EAR paid substantial amounts of money to its board of directors, officers, and others detailed below (*Id.*)

Ms. Malone and Mr. Anstett were officers of EAR, and both resigned their positions on October 8, 2009. (*Id.* at ¶ 10.) Mr. Player was married to Ms. Malone, and he played an integral role in structuring and effectuating the transactions which constituted the fraud described above. (*Id.* at ¶ 11.) In addition, Mr. Player had the power, authority, and/or ability to sign checks on EAR's accounts. (*Id.*) EAR paid Mr. Player substantial sums throughout the four-year period prior to the petition date. (*Id.*)

James Walker and his wife are the co-owners of Charter Airlines (Charter Airlines 7056-1 Statement at ¶ 2), a Nevada limited liability company. (Plan Administrator 7056-1 Statement at ¶ 3.) Mr. Walker has been the director of operations, chief pilot, and the captain on every of Charter's flights for the past forty years. (Charter Airlines 7056-1 Statement at ¶ 2.) The parties

do not dispute that Charter Airlines was engaged to fly Mr. Player, Mr. Anstett, and Ms. Malone to various locations across the country. All of the chartered flights were initially charged to an American Express credit card in the name of EAR. (*Id.* at ¶ 5.) To save money and avoid credit card fees, Mr. Player then began paying Charter Airline's invoices by EAR company checks. (*Id.*)

The following EAR checks were given to Charter Airlines for various flights taken by Mr. Player, Mr. Anstett, and Ms. Malone:

>    Check No. 906947 dated July 17, 2008 in the amount of $16,000
>    Check No. 1055 dated September 7, 2008 in the amount of $14,000
>    Check No. 907730 dated September 28, 2008 in the amount of $24,000
>    Check No. 1075 dated October 6, 2008 in the amount of $24,000
>    Check No. 1062 dated October 29, 2008 in the amount of $28,000
>    Check No. 908310 dated December 17, 2008 in the amount of $24,000
>    Check No. 1129 dated December 26, 2008 in the amount of $24,000

(Plan Administrator 7056-1 Statement at ¶ 12.) The aggregate amount of the payments within the two-year period prior to the petition date, October 23, 2007 to October 23, 2009, was $161,500.[1] (*Id.* at ¶ 14.)

Mr. Walker never asked and was never informed whether the chartered flights were booked for business or personal purposes. (Charter Airlines 7056-1 Statement at ¶ 6.) At the time the chartered flights were booked, Mr. Walker was not aware that EAR was insolvent or that EAR, Mr. Player, Mr. Anstett, and/or Ms. Malone were engaged in a fraudulent scheme. (*Id.* at ¶ 8.) The price Charter Airlines charged for each flight was the fair market value for a charter airline flight, taking into account the market value of fuel at the time. (*Id.* at ¶ 9.)

EAR filed its Chapter 11 bankruptcy case on October 23, 2009. On July 15, 2010, the Court approved EAR's plan of liquidation pursuant to which EAR executed the Plan

---

[1] The seven checks referenced above total $154,000 not $161,500. It is unclear to the Court how the parties have arrived at the $161,500 sum. For purposes of these motions, however, the Court need not determine the exact sum.

7

Administrator agreement that named the Plan Administrator. The instant adversary proceeding was filed on October 17, 2011.[2] In his one-count complaint, the Plan Administrator alleges that the above-referenced transfers were made for less than reasonably equivalent value during a time when EAR was insolvent and thus are avoidable fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) and recoverable under 11 U.S.C. § 550.

## IV. DISCUSSION

### A.    11 U.S.C. § 548

In order to sustain a claim that a pre-petition payment is avoidable as constructively fraudulent under § 548(a)(1)(B), a movant prove, by a preponderance of the evidence, the following elements: (1) a transfer of the debtor's property or interest therein; (2) made within two years of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent when the transfer was made or it was rendered insolvent thereby. *White v. Coyne, Schultz, Becker & Bauer, S.C. (In re Pawlak)*, 483 B.R. 169, 182 (Bankr. W.D. Wis. 2012); *Grochocinski v. Schlossberg, (In re Eckert)*, 388 B.R. 813, 830-31 (Bankr. N.D. Ill. 2008), *aff'd*, 402 B.R. 825 (N.D. Ill. 2009). The parties agree that there was a transfer of EAR's property made within two years of the filing of the bankruptcy petition and that EAR was insolvent when the transfers were made. The only element in dispute is whether EAR received less than a reasonably equivalent value in exchange for the transfers.

The Bankruptcy Code does not define the term "reasonably equivalent value." The Seventh Circuit, however, has stated that the test utilized to determine "reasonably equivalent value" requires courts to determine the value of what was transferred and compare that value to

---

[2] On March 28, 2014, the Plan Administrator filed a motion to withdraw the reference. On May 1, 2014, the District Court denied that motion.

the value the debtor received. *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007); *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). The determination of what constitutes "reasonably equivalent value" does not involve application of a fixed mathematical formula. *Barber*, 129 F.3d at 387. Because value need only be reasonably equivalent, a "debtor need not collect a dollar for dollar equivalent to receive reasonably equivalent value." *Id.*

Determination of "reasonably equivalent value" under § 548(a)(1)(B) is a two-step process. *Anand v. Nat'l Republic Bank of Chi.*, 239 B.R. 511, 516-17 (N.D. Ill. 1999). A court must first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up. *Id.* at 517. The second inquiry – whether the value given by the debtor was reasonably equivalent to the value he received – is more difficult. *Id.* "Equivalent value must be measured as of the time of the transfer." *Baldi v. Lynch (In re McCook Metals, LLC)*, 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005).

Whether "reasonably equivalent value" has been given is a question of fact that depends on the circumstances surrounding the transaction. *Barber*, 129 F.3d at 387. The factors utilized to determine reasonably equivalent value are: (1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Id.* "Fair market value is defined as 'the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.'" *Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.)*, 360 B.R. 787, 840 (Bankr. N.D. Ill. 2007) (quoting Black's Law

9

Dictionary 1587 (8th ed. 2004)). The movant bears the burden of proof on this issue. *See Barber*, 129 F.3d at 387.

**B.   The Plan Administrator's Motion for Summary Judgment**

The parties dispute whether EAR received less than reasonably equivalent value in exchange for the transfers. The Plan Administrator argues that the chartered flights to and from Las Vegas, Nevada were for the personal use and enjoyment of Mr. Player, Mr. Anstett, and Ms. Malone, and thus, by definition, Charter Airlines did not deliver any value to EAR. In support of his motion, the Plan Administrator provides his affidavit wherein he avers that his investigation determined that the checks paid to Charter Airlines by EAR for Mr. Player, Mr. Anstett, and Ms. Malone to charter flights to and from Las Vegas were for their personal use and enjoyment. He concludes from this alleged fact that the Debtor did not receive any value for making the payments by the checks to Charter Airlines.

Charter Airlines counters that EAR did receive reasonably equivalent value in return for the chartered flights. Specifically, Charter Airlines submitted the affidavit of Mr. Walker, who stated that it was his belief that the flights booked were for business purposes on behalf of EAR. In support of this belief, Mr. Walker states that, during the flights in question, Mr. Player was constantly engaged in cell phone conversations that seemed to be business in nature. Specifically, he overheard Mr. Player discussing financing, loans, and acquisitions in these phone conversations. Mr. Walker also states that he understood that he was flying EAR's officers to business meetings or investor meetings.

Based upon the competing affidavits of the Plan Administrator and Mr. Walker, the Court finds that there is a material issue of disputed fact regarding whether EAR received a reasonably equivalent value for the chartered flights. Because the parties dispute whether the flights were chartered for business or pleasure, summary judgment is not appropriate. The Court would have

to conduct a trial on the issue of whether EAR received reasonably equivalent value. Accordingly, the Court denies the Plan Administrator's motion for summary judgment.

C.   **Charter Airlines' Motion for Summary Judgment**

Next, Charter Airlines argues that it is entitled to summary judgment in its favor because it has a defense under § 548(c). Section 548(c) can be used to shelter payments from the trustee's avoiding power and provides:

> (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

There are two prongs to the defense under § 548(c) – value and good faith. *Helms v. Roti (In re Roti)*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002), *aff'd sub. nom., Nelmark v. Helms*, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003). Section 548(c) is an affirmative defense under which the transferee bears the burden of proof on both elements. *Id.*

Section 548(d)(2)(A) of the Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor. . . ." 11 U.S.C. § 548(d)(2)(A). Under § 548(c)

> [i]nstead of inquiring into the possibility and extent of the debtor's loss, [the statute] provides a means by which the unwitting [transferee] can protect himself. Received property can be retained "to the extent" that the "transferee . . . gave value to the debtor." The provision looks at value from the perspective of the transferee: How much did the transferee "give"? The concern here, quite properly, is for the transferee's side of the exchange, not the transferor's gain.

*Jimmy Swaggart Ministries v. Hayes, Jr. (In re Hannover Corp.)*, 310 F.3d 796, 802 (5th Cir. 2002).

In determining whether the transferee acted in good faith under § 548(c), courts make both an objective and a subjective examination. In particular, if the circumstances would place a reasonable person on inquiry as to the fraudulent scheme and such inquiry would have revealed it, the good faith defense will not be available. *Brandt v. KLC Fin., Inc. (In re Equip. Acquisition Res., Inc.)*, 481 B.R. 422, 429 (Bankr. N.D. Ill. 2012). Mere subjective good faith and lack of knowledge is therefore not dispositive. *Id.* The transferee must show that the circumstances surrounding the transfers at issue would not have placed a reasonable person on inquiry notice of the alleged fraud. *Id.*

The Plan Administrator disputes that Charter Airlines took the EAR payments in good faith within the meaning of § 548(c). Specifically, the Plan Administrator argues that there are issues of material fact regarding the transferee's good faith which preclude summary judgment because each of the checks accepted by Charter Airlines was from EAR, but the customer of record was Mr. Player personally.

This argument fails because the Plan Administrator does not dispute that Mr. Walker was unaware either that EAR was insolvent or that the Debtor, Mr. Player, Mr. Anstett, and/or Ms. Malone were allegedly engaged in a fraudulent scheme. Nor does the Plan Administrator raise any plausible allegation that a reasonable person in Mr. Walker's position would or should have known of these facts. The Plan Administrator also does not dispute that the price charged by Charter Airlines was the fair market value for such flights and that Mr. Walker never asked whether the flights were booked for business or personal purposes.

Taken together, the Court finds that the undisputed facts establish the element of good faith for purposes of § 548(c). Based on these facts, the Court finds that Charter Airlines had no actual knowledge of the fraudulent scheme and that there were no facts or circumstances available to Charter Airlines that would have placed a reasonable person on constructive notice of the Debtor's fraud.

The Plan Administrator next argues that the § 548(c) defense does not apply because Charter Airlines did not give any value to EAR in exchange for the payments it received for the chartered flights. This argument also fails because it improperly focuses on the value received by EAR, rather than on the value given by Charter Airlines. *See Hannover*, 310 F.3d at 802.

The Plan Administrator argues that the Court should reject the teaching of the *Hannover* case and instead rule that defendants who are not able to establish reasonably equivalent value for purposes of § 548(a)(1)(B) are to be denied the shelter of § 548(c). In support of this argument, the Plan Administrator cites to two bankruptcy court opinions: *Roti*, 271 B.R. 281 and *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425 (Bankr. N.D. Ill. 1995).

The Court declines the Plan Administrator's invitation because those two cases are factually distinguishable from the case at bar. In each of those cases, the court found that the transferee gave *no* value and therefore the §548(c) shelter was unavailable. In a case like the present one, however, it is undisputed that the transferee gave value. Under the factual circumstances of this case, the Court finds that reading § 548(a) and (c) together requires that the Court's focus under § 548(c) be upon the value given by the transferee, not the value received by the debtor: "Read in combination, §§ 548(a) and (c) are perfectly complementary. The first section affords creditors a remedy for the debtor's fraudulence . . . the second protects the transferee from his unfortunate selection of business partners." *Hannover*, 310 F.3d at 802.

Here, it is undisputed that the price Charter Airlines charged for each flight was the fair market value for a charter airline flight, taking into account the market value of fuel at the time. Because the defense under § 548(c) looks at value from the perspective of the transferee, the Court finds that Charter Airlines has met its burden of proof on the value element of the § 548(c) defense. Accordingly, the Court finds that Charter Airlines has established that there are no material issues of fact and that it is entitled to summary judgment in its favor as a matter of law with respect to the § 548(c) defense.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court deny the Plan Administrator's motion for summary judgment and grant Charter Airlines' motion for summary judgment. This constitutes the Court's proposed findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 9033.

**ENTERED:**

DATE: June 17, 2014

*Donald R. Cassling*
**Donald R. Cassling**
**United States Bankruptcy Judge**